RECEIVED
IN LAKE CHARLES, LA.

JUL -8 2013

TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| SOPHIE JOHNSTON, INDIVIDUALLY AND ON BEHALF OF HER MINOR DAUGHTER, MADELINE DANAHAY | : | DOCKET NO. 2:12-CV-01049-PM-KK |
| VS. | : | JUDGE MINALDI |
| CINCINNATI INSURANCE COMPANY | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [Doc. 12], filed by the defendant, Cincinnati Insurance Co. ("Cincinnati"). The plaintiff, Sophie Johnston, filed an opposition [Doc. 14], and Cincinnati filed a reply [Doc. 16]. Also before the court is a Motion for Oral Argument [Doc. 15], filed by Mrs. Johnston, which will be DENIED, as the court will decide this motion on the briefs. For the foregoing reasons, Cincinnati's Motion for Summary Judgment is DENIED.

## FACTUAL BACKGROUND

This case arises out of an insurance coverage dispute between Mrs. Johnston and Cincinnati, who denied coverage for car-accident related injuries for her daughter, Madeline Danahay ("Ms. Danahay"), under Mrs. Johnston's husband's underinsured motorist policy.[1] Mrs. Johnston originally filed suit in the Fourteenth Judicial Court of Calcasieu Parish in April

---

[1] See Pl.'s Compl., [Doc. 1-1].

1

2012, and Cincinnati then timely removed to this court on the basis of diversity jurisdiction, 28 U.S.C. § 1332.[2]

The undisputed facts are as follows: Ms. Danahay, the minor daughter of Mrs. Johnston and Mr. Daniel Patrick Danahay, suffered injuries in a car accident on March 16, 2011 while riding as a guest passenger in Tyler J. Dean's car. Soon, Ms. Danahay's medical bills surpassed the insurance coverage limits of Mr. Dean's insurance policy, and thus she sought additional coverage under her stepfather, Mr. Paul Johnston's, underinsured motorist insurance policy provided by Cincinnati.

Mr. Johnston, the named insured, is a resident of Lexington, Kentucky. His Cincinnati policy had effective dates of March 26, 2010 to March 26, 2011, thus covering the date of Ms. Danahay's accident. It is uncontested that the vehicle involved in Ms. Danahay's accident was not one of the vehicles covered under the policy, although this appears to be immaterial to the coverage dispute between the parties.

Mr. Johnston's policy's underinsured motorist coverage provides that Cincinnati "will pay damages which a 'covered person' is legally entitled to recover from the owner or operator of an 'underinsured motor vehicle' because of 'bodily injury or death.'"[3] The policy further defines "covered person" to include "You" or any "family member."[4] Under the policy, "You" and "Your" includes "the named insured" (here, Mr. Johnston) or "the spouse if a resident of the same household."[5] Additionally, the policy defines "family member" to include "a person

---

[2] Not. of Removal, [Doc. 1].

[3] Cincinnati Policy, Ex. 1 to Def.'s Mot. for Summ. J., [Doc. 12-3] at p. 23.

[4] Id.

[5] Id. at p. 7.

2

related to 'you' by blood, marriage, or adoption who is a resident of 'your' household.'"[6] Thus, at the time of the accident, it was necessary that Ms. Danahay be a resident of Mr. Johnston's household in Lexington, Kentucky, in order to be covered under his Cincinnati policy.

After Ms. Danahay's medical bills exhausted the $25,000 limit of Mr. Dean's insurance policy, Ms. Danahay, through Mrs. Johnston, filed a claim for coverage under Mr. Johnston's underinsured motorist policy for the remainder of her medical bills. Cincinnati denied her claim, asserting that neither Mrs. Johnston nor Ms. Danahay were residents of Mr. Johnston's household in Lexington, Kentucky, as required under the policy. Mrs. Johnston subsequently filed this suit.[7]

Cincinnati now moves for summary judgment, arguing that there is no dispute of material fact as to whether Ms. Danahay constitutes a covered member of Mr. Johnston's household, as per the dictates of the policy language.

## MOTION FOR SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery that show the lack of a genuine dispute of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court

---

[6] *Id.*

[7] Cincinnati then filed suit in Kentucky state court, seeking a declaratory judgment that Ms. Danahy was not covered under Mr. Johnston's policy. The Kentucky court has stayed that action because it is duplicative of this case. *See* Cincinnati's Opp. to Plea of Abateman, Ex. 23 to Pls.' Opp. to Mot. for Summ. J., [Doc. 14-24].

must deny the moving party's motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant satisfies this burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* (quoting *Celotex*, 477 U.S. at 323). In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no genuine issue for trial, and thus a grant of summary judgment is warranted, when the record as a whole "could not lead a rational finder of fact to find for the non-moving party…" *Id.*

## LAW AND ANALYSIS

### I. Choice of Law

As an initial note, it appears that Kentucky law should apply to this case. Under diversity jurisdiction, this court must apply the law of the forum state (Louisiana) to determine which state's laws apply. *Mumblow v. Monroe Broadcasting, Inc.*, 401 F.3d 616, 620 (citing *Woodfield v. Bowman*, 193 F.3d 354, 359, n. 7 (5th Cir. 1999)). In insurance cases, under Louisiana's choice-of-law provisions, Louisiana courts typically apply the law of the state "where the insurance policy was issued and executed" (here, Kentucky). *Am. Elec. Power Co., Inc. v. Affiliated FM Ins. Co.*, 556 F.3d 282, 285 n. 2 (5th Cir 2009); *Woodfield v. Bowman*, 193 F.3d 354, 360–61 (5th Cir.1999) (applying Mississippi law and noting that "Louisiana courts generally choose the law of the state in which the insurance policy in question was issued to govern the interpretation of the terms of the policy"); *Breese v. Hadson Petroleum (USA), Inc.*, 955 F.Supp. 648, 650 & n. 5 (M.D. La. 1996) (applying Mississippi law when "the policy was negotiated and executed in Mississippi"); *Resure, Inc. v. Chem. Distribs. Inc.*, 927 F. Supp.

190, 192 (M.D. La.1996) ("When confronted with similar cases, Louisiana courts consistently apply the law of the state in which the insurance policy was executed."). Further, the policy includes a choice of law provision which states that "this policy and all of its terms shall be construed and interpreted in conformity with the laws of the state in which it was issued" (once again, Kentucky).[8]

The Fifth Circuit has held, however, that "[i]f the laws of the states do not conflict, then no choice-of-law analysis is necessary," and a court may simply apply the law of the forum state. *Mumblow*, 401 F.3d at 620 (citing *Schneider Nat'l Transp. v. Ford Motor Co.*, 280 F.3d 532, 536 (5th Cir.2002)). The court agrees with the parties that Kentucky law and Louisiana law do not conflict on the issue of insurance contract interpretation in general[9] and as it relates to

---

[8] Cincinnati policy at p. 22.

[9] Under Louisiana law,

> [Insurance contracts] should be construed using the general rules of interpretation of contracts set forth in the Civil Code. The judicial responsibility in interpreting insurance contracts is to determine the parties' common intent. Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning.
>
> An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Unless a policy conflicts with statutory provisions or public policy, it may limit an insurer's liability and impose and enforce reasonable conditions upon the policy obligations the insurer contractually assumes.
>
> If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer and in favor of coverage. Under this rule of strict construction, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer. That strict construction principle, however, is subject to exceptions. One of these exceptions is that the strict construction rule applies only if the ambiguous policy provision is susceptible to two or more reasonable interpretations. For the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable.

*Huggins v. Gerry Lane Enterprises, Inc.*, 2006- 2816 (La. 5/22/07); 957 So. 2d 127, 128–29.

Similarly, under Kentucky law,

5

interpreting policy language like the language in this case,[10] and thus the court will apply Louisiana law.

## II. Coverage for Ms. Danahay

The parties' main contention is whether Ms. Danahay constitutes a member of Mr. Johnston's household, thus providing coverage for her under his Cincinnati underinsured motorist policy. The undersigned notes that Ms. Danahay's family structure is rather unusual, and it appears no court has addressed this exact issue before. In sum, while Ms. Danahay's mother, Mrs. Johnston, married Mr. Johnston (who lives in Kentucky) a few years ago, the mother and daughter still spend much of their time in the Sulphur, Louisiana area because of a court-issued custody agreement between Mrs. Johnston and Mr. Danahay, which requires Ms. Danahay to be enrolled in school and live there. Accordingly, the mother and daughter make the trek from Sulphur, Louisiana to Lexington, Kentucky a couple of weekends a month in order to spend time with Mr. Johnston and his children in Kentucky.

---

> Interpretation of insurance contracts is generally a matter of law to be decided by the court.... Under the reasonable expectation doctrine, ambiguous terms in an insurance contract must be interpreted in favor of the insured's reasonable expectations and construed as an average person would construe them. But "[o]nly actual ambiguities, not fanciful ones, will trigger application of the doctrine." Absent ambiguity, terms in an insurance contract are to be construed according to their "plain and ordinary meaning." Insurance polices should be construed according to the parties' mutual understanding at the time they entered into the contract, with this mutual understanding to be deduced, if at all possible, from the language of the contract itself. Exceptions and exclusions in insurance policies are to be narrowly construed to effectuate insurance coverage. But "[r]easonable conditions, restrictions, and limitations on insurance coverage are not deemed *per se* to be contrary to public policy."

*Hugenberg v. West American Ins. Co./Ohio Cas. Group*, 249 S.W.3d 174, 185-86 (Ky. Ct. App. 2006).

[10] Louisiana courts' interpretation of what constitutes a resident of an insured's household will be discussed in greater detail *infra*. As correctly noted by the parties, however, Kentucky law construes the policy language at issue in this case in a similar fashion. *See Perry v. Motorists Mut. Ins.*, 860 S.W.2d 762 (Ky. 1993) ("[R]esidency is based on fact and intention.... As to what is or was one's residence often presents difficult questions and each case must be disposed of on its own peculiar facts.... Kentucky case law has previously defined residence as a factual place of abode or living in a particular locality.... Whether a new residence has been acquired or an old residence abandoned is dependent on the totality of all facts and circumstances.... Several other jurisdictions favor the role of the jury and not the bench to determine residency....").

6

Whether a person is or is not a resident of an insured's household is a question of law and fact. *Taylor v. State Farm Mutual Auto. Ins. Co.*, 178 So. 2d 238 (La. 1965). If the relevant residency facts are not in dispute, then the ultimate conclusion as to residency is a question of law. *Ladner v. Andrews*, 216 So. 2d 365 (La. App. 3 Cir. 1968).

Several cases are instructive on this issue. For example, in *Taylor v. State Farm Mutual Insurance Company*, the Louisiana Supreme Court interpreted the phrase "relative of the named insured who is a resident of the same household" to include an unemancipated minor who, after graduating high school, moved from his father's home to his uncle's house in Louisiana and also started working in Louisiana. *Id.* at 261. After marshaling all of the facts, the *Taylor* Court concluded:

> . . . under the facts of the instant case, Daniel Taylor's legal residence was that of his father, Garnie William Taylor, Camden, Arkansas. Daniel was a member of his father's family; there had been no divestiture of relationship; and, he visited his parents. Although he did want to work with his uncle, there is no showing that Daniel was not free to go home at any time he pleased, and there is also no showing that his parents were unwilling or were not obligated to support him. There is no conclusive evidence of record that Daniel had made a permanent residence in Louisiana at the time of the accident.
>
> We conclude that while he was an unemancipated minor Daniel had to be considered as temporarily absent from his parent's home. We find that it was not necessary that he be under his parents' roof at all times in order to be a 'resident of the same household.' We further find that under the facts as presented, Daniel Taylor was a 'resident of the same household' as the insured, Garnie W. Taylor.

*Id.*

Other courts, relying on the benchmark *Taylor* case, have come to disparate results on whether a child qualifies as a resident of an insured's household, depending on the unique fact pattern presented in their respective cases. In a different Louisiana Supreme Court case, *Bond v. Commercial Union Assur. Co.*, 407 So. 2d 401 (La. 1981), the Louisiana Supreme Court, on

rehearing, found that a jury had correctly found that a son should be considered a resident of his insured father's household for insurance coverage purposes. *Id.* at 408. In its original opinion, the Court acknowledged that the son had left his father's house in Alexandria after graduating high school in order to attend college and join the Navy. *Id.* at 406. He eventually moved to an apartment in Lafayette so that he could be close to the Port of Iberia (where he worked as an anchor handler). *Id.* Nonetheless, other facts pointed to residency: the son only kept work clothing and "bare essentials" in his Lafayette apartment, which he apparently lived in solely so he could be close to work; he lived at his father's home in Alexandria most of the time when he was not required to be on call for work; he kept many of his personal belongings at his father's home, including his two dogs; he received mail at his father's home; and, he testified that he had substantial ties to the Alexandria community. *Id.* at 407. Assessing all of these facts, the Court found that "there was ample evidence to support a finding that the deceased was a resident of his father's household." *Id.* at 408; *see also Manuel v. American Employers Ins. Co.*, 228 So. 2d 321 (La. App. 3 Cir. 1969) (affirming trial court judgment and finding that a 24-year-old son was a resident of his parents' household for the purposes of insurance coverage, because while the son lived and went to school in Lafayette, he had never moved away from his "permanent home with his parents," nor did he "sever[] his ties with his parents' home as his permanent residence to which he returned whenever free."); *Fidelity General Ins. Co. v. Ripley*, 228 So. 2d 238 (La. App. 3 Cir. 1969) (affirming trial court's judgment after trial on the merits and finding that an unemanicpated minor son was a resident of insured father's household because, while his mother and father were separated, and he lived with his mother most of the time, his father still had an obligation to support the son; the son kept clothes at father's home; the son spent time at his father's home; and, the son intended to move back to Lake Charles to be with his father and

attend McNeese University); *but see Ladner v. Andrews*, 216 So. 2d 365 (La. App. 3 Cir. 1968) (affirming grant of summary judgment in favor of insurance company and finding that granddaughter was not a resident of insured grandparents' household because grandparents had no obligation to support her; she had not resided with them for several months before the accident; she only sporadically visited; and, she testified by affidavit that her permanent residence was elsewhere); *Hamilton v. State Farm Mutual Aut. Ins. Co.*, 364 So. 2d 215 (La. App. 3 Cir. 1978) (affirming summary judgment in favor of insurance company and finding that a son was not a resident of his insured parents' household because he had not lived with them for several years; he sporadically visited; his parents were under no obligation to support him; and, he testified that his residence was elsewhere).

Cincinnati points to several facts to show that Ms. Danahay was not a resident of Mr. Johnston's household at the time of her accident:[11]

1. At the time of the accident, Ms. Danahay attended Sulphur High School, located in Calcasieu Parish.

2. Ms. Danahay's driver's license is issued by the State of Louisiana and lists her home address in Sulphur.

3. Ms. Danahay has never attended school or worked in Kentucky.

---

[11] The court notes that Cincinnati also references facts relevant to the time period *after* Ms. Danahy's accident to show that she was not a resident of Mr. Johnston's household, including: (1) Ms. Danahay later got a job at Walgreens in Sulphur, Louisiana, where she works after school and on weekends; (2) after her accident, Ms. Danahay applied to, was accepted, and plans to attend McNeese State University; and, (3) Ms Danahay intends to reside in an apartment in Lake Charles, Louisiana while attending McNeese State University. The court notes that these facts are irrelevant to the inquiry here, which is whether Ms. Danahy was a resident of Mr. Johnston's household at the time of her accident.

4. Ms. Danahay has not participated in any extracurricular activities, social clubs, groups or anything of the sort in Kentucky. The only extracurricular activities Ms. Danahay participated in, which include Future Farmers of America and speech team, took place in Calcasieu Parish.

5. Ms. Danahay keeps all of her school books in her room in Calcasieu Parish, Louisiana.

6. Ms. Danahay regularly attends church in Louisiana but has no regular connection with any such institution in Kentucky.

7. Ms. Danahay receives no mail at Mr. Johnston's residence in Kentucky.

8. None of Ms. Danahay's physicians or dentists is located in Kentucky.

9. At the time of the accident, Ms. Danahay did not have a room of her own or her own bed in Mr. Johnston's residence in Kentucky, nor did she have a key to Mr. Johnston's residence in Kentucky. Further, she only kept a few clothes and basic toiletries at Mr. Johnston's house.

In contrast, Mrs. Johnston points to other factors to show that Ms. Danahay was a resident of Mr. Johnston's household:

1. Ms. Danahay's mother, Sophie Johnston, has bought furniture and decorations for the Kentucky residence and displays family photos, which include Madeline Danahay, at their Kentucky residence.

2. Ms. Danahay and her mother, Sophie Johnston, maintain two residences: one in Sulphur, Louisiana; the other in Lexington, Kentucky.

3. Ms. Danahay shares a room with her stepsisters at her Kentucky residence.

4. Ms. Danahay considered attending the University of Kentucky and had her ACT scores sent there.

5. Ms. Danahay's dog stays at her Kentucky residence.

6. Ms. Danahay keeps personal belongings at her Kentucky residence such as clothes and toiletries, and she does not need to pack necessary items when she goes to her Kentucky residence.

7. Ms. Danahay's stepfather, Mr. Johnston, bought her a car in Kentucky.

8. Ms. Danahay is close to her family members in Kentucky, including her stepfather, stepsiblings, and extended family.

9. Ms. Danahay engaged in extracurricular activities, such as boating, in Kentucky.

Mrs. Johnston also provided her own affidavit, affidavits from Mr. Johnston and Ms. Danahay, and several affidavits from family members, all attesting that Ms. Danahay is considered a part of Mr. Johnston's household.[12] She also provided family photos, which show Ms. Danahay and Mrs. Johnston with Mr. Johnston and the rest of his family in Kentucky.[13]

The parties spend the most time debating one fact issue: whether the custody agreement between Mrs. Johnston and Ms. Danahay's biological father (Mr. Danahay), which requires Ms. Danahay to stay within the Sulphur area, is ultimately controlling on the residency issue. As background, it appears that Mrs. Johnston and Mr. Danahay have been involved in a custody dispute over Ms. Danahay for several years. On July 12, 2010, Mrs. Johnston moved to modify her preexisting joint custody arrangement with Mr. Danahay. In her motion, Mrs. Johnston sought to "relocate her residence and the residence of the children of the parties [including Ms.] Danahay . . . to Lexington, Kentucky."[14] Later, in a Stipulated Judgment on Rules, entered on

---

[12] *See generally* Affidavits, Exs. 1-8 to Pl.'s Opp. to Mot. for Summ. J., [Docs. 14-2 to 14-8].

[13] *See generally* Photos, Exs. 9-15 to Pl.'s Opp. to Mot. for Summ. J.[ Docs. 14-9 to 14-16].

[14] Motion to Modify Joint Custody Plan, Ex. 5 to Def.s's Mot. for Summ. J., [Doc. 12-7] at ¶ 5.

November 10, 2010, prior to Ms. Danahay's accident, the Fourteenth Judicial District Court for the Parish of Calcasieu, Louisiana, ordered that Ms. Danahay's biological parents were "awarded the temporary joint custody of the minor child, Madeline Anne Danahay," and directed that "the Louisiana Relocation Statute shall apply to both parties and their minor children and the minor children are to remain enrolled in their current schools, until further orders of [that] Court."[15] In accordance with the Stipulated Judgment on Rules of the Fourteenth Judicial District Court, Ms. Danahay was to remain enrolled as a full-time high school student in Calcasieu Parish for the school year during which her accident occurred.[16] Then, on August 15, 2011, after Ms. Danahay's accident, the Fourteenth Judicial District Court ordered that Ms. Danahay's biological parents, "shall have the joint custody of the minor child[], Madeline Anne Danahay . . . with the parties being designated as co-domiciliary parents, in Calcasieu Parish, Louisiana.[17]

Cincinnati primarily relies on the Louisiana Third Circuit case, *Chapman v. Allstate Ins. Co.*, 306 So. 2d 414 (La. App. 3 Cir. 1975), to support its argument that Ms. Danahay's residence should be determined primarily based on the Fourteenth Judicial Court's order. In *Chapman*, the court assessed whether a minor son was a resident of his insured father's household for the purposes of uninsured motorist coverage. *Id.* at 414. The son's parents had divorced before the son's accident, and a court granted his mother sole custody, with unlimited visitation rights for the father (who was also required to pay child support). *Id.* At the trial court level, the court granted the insurance company's motion for summary judgment, finding that the

---

[15] *Danahay v. Danahay*, 09-0912 (14th Dist. Ct. La. 2/23/09), Stipulated Judgment on Rules, filed Nov. 10, 2010 ("Stipulated Judgment on Damages"), Ex. 6 to Def.'s Mot. for Summ. J., [Doc. 12-8].

[16] *See id.*

[17] *Danahay v. Danahay*, 09-0912 (14th Dist. Ct. La. 2/23/09), Consent Judgment, filed Aug. 15, 2011, Ex. 7 to Def.'s Mot. for Summ. J., [Doc. 12-9].

12

son was not a resident of his father's household. *Id.* On appeal, the Third Circuit affirmed, and specifically addressed the effect of the parents' custody agreement for their son:

> In this case, [the son] cannot be considered a Legal resident of his father's household as there was a change of status by law. When the Florida court awarded custody to Mrs. Chapman, [the son], as an unemancipated minor, became a legal resident of his mother's household and was no longer a legal resident of his father's household.

*Id.* at 416. Importantly, however, the son's legal residence was *not* the end of the court's inquiry. The court noted that it was not solely concerned with the son's "legal residence," because, even with the custody agreement, the court still could have found residency if the son actually lived at his father's house. *Id.* The court found, however, that this was not true: the son lived with his mother at the time of the accident; all of his belongings were at his mother's house; and, he had never been to his father's house. *Id.* Accordingly, the son did not have the requisite "intention to Become [sic] a resident of his father's household." *Id.*

In this case, Cincinnati cannot simply hang its hat on the Fourteenth Judicial Court's custody order and declare that this is conclusive evidence that Ms. Danahay was not a resident of Mr. Johnston's household: as in *Chapman*, the policy here does not require that an individual be a "legal resident" of the household, but rather, just a resident. Thus, the court must examine other facts. Another Louisiana Third Circuit case, *Dofflemeyeer v. Gilley*, 360 So. 2d 909 (La. App. 3 Cir. 1978), is also instructive on this issue. In *Dofflemeyer*, the appeals court found the trial court had improperly granted summary judgment in favor of a defendant insurance company. The trial court had found that the insured's son was a resident of his insured father's home simply because he was a legal resident there (in this particular case, a finding of residency equated to non-coverage because of an exclusionary provision in the policy). *Id.* On appeal, the

Third Circuit noted that the policy instead only required the son to be a resident of his insured father's household, and that

> "Residence" . . . is not a specific legal term. It is a term in common usage and has a variety of meanings. One may have residence in a home, institution, town, city, parish, state, country, continent, etc. As has been noted in several cases, the term is nebulous and really has no precise meaning. The major distinction between domicile and residence lies in the fact that although a person may have only one domicile, he may have several residences . . .

*Id.* at 912 (internal citations omitted). Concluding, the court found that, notwithstanding his legal residence with his father, there was a sufficient fact issue as to whether the son was a resident of his father's household, thus precluding summary judgment: the son had moved out of his father's home at some time before the accident; he only returned to his father's home occasionally; he kept few personal effects at his father's home; and, his parents did not know where he was living. *Id.* at 913–14.

In this case, marshaling all of the facts and construing them in the light most favorable to the plaintiff, there is a genuine dispute of material fact on whether Ms. Danahay may be considered a resident of Mr. Johnston's household for the purposes of coverage. Legal residence alone is not dispositive. As noted by the *Dofflemeyer* court, an individual may have multiple residences. *Id.* at 912. Further, the case law from Louisiana indicates that, even when a child is not at an insured's household that often, other factors (the insured's obligation to support the child, the child's connection to the insured's household, the presence of the child's belongings at the household, etc.) may indicate residency. The court will not make a finding of no coverage simply because Ms. Danahay's custody situation made it much more difficult for her to see her stepfather on a regular basis.[18]

---

[18] Because the court finds that summary judgment is improper on the issue of whether Ms. Danahy herself is a resident of Mr. Johnston's household, it will not reach the merits of Mrs. Johnston's argument that, assuming Ms. Danahy is not a resident of Mr. Johnston's household, coverage still attaches because she is a resident of Mrs.

14

## CONCLUSION

In conclusion, because the plaintiff has created a genuine dispute of material fact as to whether Ms. Danahay is a resident of Mr. Johnston's household, the court will deny Cincinnati's summary judgment motion on the issue of coverage.

Lake Charles, Louisiana, this __8__ day of ____July____ 2013.

_____
PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

---

Johnston's household in Louisiana, who falls under the definition of "you" in the policy (insured's "spouse if a resident of the same household").